# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MISSOURI

# EASTERN DIVISION

| | |
|---|---|
| FRANK JULIANELLO, on Behalf of Himself and All Others Similarly Situated, | Civil Action No. 11-cv-01816-AGF |
| | <u>CLASS ACTION</u> |
| Plaintiff, | |
| v. | |
| K-V PHARMACEUTICAL COMPANY, GREGORY J. DIVIS, JR. and SCOTT GOEDEKE, | |
| Defendants. | |
| RAMAKRISHNA MUKKU, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 11-cv-01888-CEJ |
| | <u>CLASS ACTION</u> |
| Plaintiff, | |
| vs. | |
| K-V PHARMACEUTICAL COMPANY, GREGORY J. DIVIS, JR. and SCOTT GOEDEKE, | |
| Defendants. | |

[Caption continued on following page.]

MEMORANDUM OF LAW IN SUPPORT OF KENNETH A. LEIGHT'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

| | |
|---|---|
| HOICHI CHEONG, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> K-V PHARMACEUTICAL COMPANY, GREGORY J. DIVIS, JR. and SCOTT GOEDEKE, <br><br> Defendants. | ) <br> ) Civil Action No. 11-cv-01905-RWS <br> ) <br> ) <u>CLASS ACTION</u> <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Putative class member Kenneth A. Leight ("Mr. Leight") respectfully submits this memorandum of law in support of his motion for consolidation, appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and for approval of his selection of Kessler Topaz Meltzer & Check LLP ("Kessler Topaz") as lead counsel and Dysart Taylor Cotter McMonigle & Montemore, P.C. ("Dysart Taylor") as liaison counsel for the class.

## I.   PRELIMINARY STATEMENT

Presently pending before this Court are the three above-captioned securities class action lawsuits (the "Related Actions") brought on behalf of all those who purchased K-V Pharmaceutical Company ("KV" or the "Company") securities between February 14, 2011 and April 4, 2011, inclusive (the "Class Period").[1]  The Related Actions similarly charge KV and certain of its officers with violations of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the PSLRA.

Proposed lead plaintiff Mr. Leight hereby moves this Court for an order: (1) consolidating all Related Actions; (2) appointing Mr. Leight as Lead Plaintiff pursuant to the PSLRA, 15 U.S.C. §78u-4; (3) approving Mr. Leight's selection of Kessler Topaz as Lead Counsel and Dysart Taylor as Liaison Counsel; and (4) granting such other and further relief as the Court may deem just and proper.  This motion is made on the grounds that Mr. Leight is the most adequate plaintiff as defined by the PSLRA.  Mr. Leight suffered losses of $100,881 in connection with his purchases of KV securities during the Class Period.  *See* Declaration of Don R. Lolli In Support of Kenneth A. Leight's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of His Selection of Lead Counsel and Liaison Counsel ("Lolli Decl."), Ex. A.  In addition, Mr. Leight, for purposes of

---

[1] The Company common stock trades as series A and series B shares.

this motion, satisfies the requirements of Federal Rules of Civil Procedure 23 in that his claims are typical of the claims of the putative class and that he will fairly and adequately represent the interests of the class. Accordingly, Mr. Leight's motion should be granted.

## II.    FACTUAL BACKGROUND[2]

KV is a pharmaceutical company that develops, manufactures, acquires, and markets branded and generic/non-branded prescription pharmaceutical products. KV has historically operated in three segments: branded products, specialty generics, and specialty raw materials. The Company is incorporated in Delaware and maintains its principal executive offices in Bridgeton, Missouri.

On February 4, 2011, prior to the start of the Class Period, KV received Food and Drug Administration ("FDA") approval through the Orphan Drug Act ("ODA") for the exclusive right to market Makena (also known as 17P). 17P is a prescription hormone injection intended for use by pregnant women who have previously delivered a preterm child in order to reduce the risk of having another preterm childbirth. 17P had been previously approved by the FDA in 1956 and was manufactured by Bristol-Myers Squibb until 2000. Because 17P was not protected by patents, after production ceased in 2000, some pharmacies, through a process known as "compounding," would make the drug in small quantities as needed. Women were charged between $10 and $20 per compounded injection of 17P—approximately $200 to $400 for a full course of treatment. Almost immediately after receiving the current FDA approval for the drug, KV priced Makena at $1,500 per injection—raising the cost of treatment to between $15,000 and $30,000.

The Class Period begins on February 14, 2011. On this day, KV held a conference call with analysts and investors concerning the commercialization of Makena. KV discussed expanded patient access to treatment as the result of Makena approval and the financial assistance programs the

Company would use to help get Makena into the market.  KV also assured investors that the Company would have exclusive rights over the distribution of Makena by noting that "compounding pharmacies are not FDA-approved manufacturing facilities and that FDA regulations and state pharmacy laws generally prohibit the distribution of compounded products that are the same or essentially the same as FDA-approved products."  On this news, KV's stock prices soared.  KV's series A stock increased nearly 50% from a close of $4.38 per share on February 11, 2011 to close at $6.53 per share on February 14, 2011.  Similarly, KV's series B stock increased nearly 45% from a close of $4.42 per share on February 11, 2011 to close at $6.40 per share on February 14, 2011.

Then, on February 17, 2011, the Company sent a letter to compounding pharmacists warning them that "[the FDA's enforcement] discretion does not extend to compounding of copies or essentially copies of commercially available FDA-approved products" and that the continued compounding of 17P is "subject to FDA enforcement for violating certain provisions of the Federal Food, Drug and Cosmetic Act, as well as FDA guidance."  The Company's series A stock increased nearly 15% to close at $9.86 per share on February 18, 2011 and the Company's series B stock increased over 15% to close at $9.87 per share on February 18, 2011 in response to the news.

On March 17, 2011, KV's claims of increased access to the drug and exclusive distribution and manufacturing rights were called into question by U.S. Senators Amy Klobuchar and Sherrod.  Specifically, the Senators expressed deep concern about the 150-fold increase in price and the potentially anticompetitive effects of KV's exclusive rights for 17P.  The Senators also noted that "the price increase will place a heavy burden on state Medicaid programs" and may "result in diminished access to appropriate health care for women and result in increased preterm births."  On this news, KV's series A stock fell $1.14 per share, or over 11%, to close at $8.50 per share on

---

[2] These facts are drawn from the allegations set forth in the Related Actions.

3

March 18, 2011. Similarly, KV's series B stock declined $1.15 per share, or over 11%, to close at $8.58 per share on March 18, 2011.

Shortly thereafter, the Company issued a press release on March 30, 2011 stating that "[b]ased on the feedback the company has received, [it is] currently exploring additional ways to help provide affordable access for all patients who are prescribed Makena." On the same day, the FDA issued a press release calling KV's letter to pharmacists incorrect and unequivocally stating that the "FDA does not intend to take enforcement action against pharmacies that compound [17P] based on a valid prescription…." Thus, contrary to the Company's prior assurances to the market, KV could not prevent the compounding of 17P. On this news, KV's series A stock fell $1.46 per share, or over 20%, to close at $5.65 per share on March 30, 2011. Similarly, KV's series B stock declined approximately $1.46 per share, or over 20%, to close at $5.70 per share on March 30, 2011.

On April 1, 2011, KV announced significant changes intended on increasing access to Makena. Specifically, KV reduced the list price of Makena to $690 per injection, announced supplemental rebates for state Medicaid agencies and expanded the Company's patient assistance program. On this news, KV's series A stock fell an additional $0.60 per share, or over 10%, to close at $5.39 per share on April 1, 2011. Similarly, KV's series B stock fell approximately $0.56 per share, or over 9%, to close at $5.37 per share on April 1, 2011.

Additional information was revealed on April 4, 2011 when *Bloomberg* reported that there was hostility towards KV as a result of the Company's initial pricing of Makena and the fact that the FDA stands behind the existing cheaper alternative of acquiring 17P from compounding pharmacies. *Bloomberg* also noted that physicians were concerned that if they purchased Makena, there would be no guarantee that the patient or insurance company would agree to pay for it. On this news, KV's A

4

stock fell an addition $0.39 per share, or over 7%, to close at $5.00 per share on April 4, 2011 while KV's B stock fell $0.34 per share, or over 6%, to close at $5.03 per share on April 4, 2011.

### III. ARGUMENT

#### A. Consolidation

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [] has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii).  There are at least three related securities class actions pending in this district on behalf of investors who purchased KV securities during the Class Period:

| **Abbreviated Case Name** | **Case Number** | **Date Filed** |
|---|---|---|
| *Julianello v. K-V Pharmacetical Co.* | 11-cv-01816 | Oct. 19, 2011 |
| *Mukku v. K-V Pharmacetical Co.* | 11-cv-01888 | Oct. 31, 2011 |
| *Cheong v. K-V Pharmacetical Co.* | 11-cv-01905 | Nov. 2, 2011 |

Under Rule 42(a), consolidation is appropriate where "actions involve a common question of law or fact." Fed. R. Civ. P. 42(a).  Here, the Related Actions present virtually identical factual and legal issues arising out of the same alleged course of misconduct and involve the purchase of KV securities by investors at artificially inflated prices during the Class Period.  Accordingly, consolidation is appropriate. *See Mas v. KV Pharmaceutical Co.*, 2009 U.S. Dist. LEXIS 32000, at *3-4 (E.D. Mo. Apr. 15, 2011).

#### B. Mr. Leight Should Be Appointed Lead Plaintiff

##### 1. The Procedure Required by the PSLRA

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the

5

Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1).  First, the plaintiff who files the initial action must publish a notice to the class within twenty days, informing class members of their right to file a motion for appointment as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(A)(i).  Here, in connection with the filing of the first-filed action, notice was published on *GlobeNewswire* on October 19, 2011.  *See* Lolli Decl., Ex. C.

Second, within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).

Third, the PSLRA provides that within ninety days after publication of notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members.  *See* 15 U.S.C. §78u-4(a)(3)(B)(i).  In determining the "most adequate plaintiff," the PSLRA states that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice…;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

The time period in which class members may move to be appointed lead plaintiff in this action expires on December 19, 2011.  *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).  Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, Mr. Leight has timely moved this Court to be appointed lead plaintiff on behalf of all members of the class.

6

Accordingly, Mr. Leight satisfies the PSLRA's filing requirements and is entitled to have his application for appointment as lead plaintiff considered by the Court.

    **2.**    **Mr. Leight is the "Most Adequate Plaintiff"**

        **a.**    **Mr. Leight Has the Largest Financial Interest in the Relief Sought by the Class**

Mr. Leight suffered losses of over $100,881 in connection with his purchase of KV securities during the Class Period.[3]  *See* Lolli Decl., Ex. A.  To the best of his knowledge, this represents the largest known financial interest in the relief sought by the class of any movant properly before the Court.  15 U.S.C. §78u-4(a)(3)(B).

        **b.**    **Mr. Leight Satisfies Rule 23**

In addition to possessing the largest financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  While the PSLRA requires that a lead plaintiff meet the requirements of Rule 23(a), at this stage of litigation, only a preliminary showing of typicality and adequacy is necessary. *See Mas*, 2009 U.S. Dist. LEXIS 32000, at *5.

        **i.**    **Mr. Leight Is Typical**

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.  The typicality requirement is met "when each class member makes similar legal arguments to prove the defendant's liability." *Mas*, 2009 U.S. Dist. LEXIS 32000, at *7.  Mr. Leight satisfies this requirement because, just like all other class members, he: (1) purchased KV securities

---

[3] Mr. Leight's losses are the same under either a first-in, first-out (FIFO) or last-in, first-out (LIFO) accounting analysis.  Mr. Leight expended $140,901 to acquire 12,000 shares of KV series A shares during the Class Period.  Mr. Leight's losses are calculated based upon the average price during the PSLRA 90-day look back period.  Mr. Leight subsequently sold all 12,000 shares at $1.39 per share on December 5, 2011.

during the Class Period; (2) at market prices artificially inflated as a result of Defendants' violations of the securities laws; and (3) suffered damages as a result. *Id*. at *7-8. Thus, Mr. Leight's claims are typical of those of other class members because his claims and the claims of other class members arise out of the same course of events. *See* 7 Herbert B. Newberg, *et al.*, *Newberg on Class Actions* §22.24 (4th ed. 2002) ("The majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met.").

### ii. Mr. Leight is Adequate

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The adequacy requirement is satisfied where, as here: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no antagonism between the interests of the proposed lead plaintiff and the other members of the class; and (3) the proposed lead plaintiff has sufficient interest in the outcome to ensure vigorous advocacy." *Mas*, 2009 U.S. Dist. LEXIS 32000, at *8.

Here, Mr. Leight is adequate because his interests are aligned with the interests of the class, as both suffered losses when corrective events removed the artificial inflation from defendants' fraud from the price of KV securities. Accordingly, both Mr. Leight and the class would benefit from the same relief. Additionally, there is no evidence of antagonism between Mr. Leight and the class, and he has certified his willingness to serve as a representative of the class. *See* Lolli Decl., Ex. B. Moreover, as shown below, Mr. Leight has retained highly qualified, experienced counsel that is able to prosecute this complex litigation in a professional manner.

Thus, for the purposes of this Motion, Mr. Leight satisfies the typicality and adequacy requirements of Rule 23.

    **C.**    **The Court Should Approve Mr. Leight's Choice of Counsel**

The PSLRA also vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should not disturb a lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Because Mr. Leight has selected and retained counsel experienced in litigating securities fraud class actions and with the resources necessary to prosecute this action to the greatest recovery possible for the class, his choice of lead counsel should be approved.

Mr. Leight has selected Kessler Topaz as lead counsel for the class.  Kessler Topaz specializes in prosecuting complex class action litigation and is one of the preeminent law firms in its field.  Kessler Topaz is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions, including actions involving Lehman Brothers, Bank of America, Medtronic, Johnson & Johnson, Transocean and UBS and has secured billions of dollars in recoveries for investors.  *See* Lolli Decl., Ex. D.

In addition, Dysart Taylor has extensive experience in complex litigation and is highly qualified to perform the duties of liaison counsel.  *See* Lolli Decl., Ex E.  Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from these firms.  Both firms are highly qualified and will zealously represent the class's interests.

**IV.**    **CONCLUSION**

For all the foregoing reasons, Mr. Leight respectfully requests that the Court: (1) consolidate all Related Actions; (2) appoint Mr. Leight as Lead Plaintiff; (iii) approve Mr. Leight's selection of

9

Kessler Topaz as Lead Counsel and Dysart Taylor as Liaison Counsel; and (vi) grant such other relief as the Court may deem just and proper.

Dated:  December 19, 2011                                  Respectfully submitted,

/s/Don R. Lolli
**DYSART TAYLOR COTTER**
**McMONIGLE & MONTEMORE, P.C.**
Don R. Lolli    MOBar#56263MO
dlolli@dysarttaylor.com
4420 Madison Avenue
Kansas City, MO 64111
Telephone: (816) 931-2700
Facsimile: (816) 931-7377

*Proposed Liaison Counsel*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Sean M. Handler
shandler@ktmc.com
Naumon A. Amjed
namjed@ktmc.com
Ryan T. Degnan
rdegnan@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Kenneth A. Leight and Proposed Lead Counsel*