# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MISSOURI

# EASTERN DIVISION

| | |
|---|---|
| FRANK JULIANELLO, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>K-V PHARMACEUTICAL COMPANY, GREGORY J. DIVIS, JR. and SCOTT GOEDEKE,<br><br>Defendants. | Civil Action No. 11-cv-01816-AGF<br><br><u>CLASS ACTION</u> |
| RAMAKRISHNA MUKKU, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>K-V PHARMACEUTICAL COMPANY, GREGORY J. DIVIS, JR. and SCOTT GOEDEKE,<br><br>Defendants. | Civil Action No. 11-cv-01888-CEJ<br><br><u>CLASS ACTION</u> |

[Caption continued on following page.]

**SUR-REPLY OF KENNETH A. LEIGHT TO NEW EVIDENCE
RAISED IN REPLY BRIEFING BY LORI AND JONCARLOS ANDERSON**

| | |
|---|---|
| HOICHI CHEONG, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>  v.<br><br>K-V PHARMACEUTICAL COMPANY, GREGORY J. DIVIS, JR. and SCOTT GOEDEKE,<br><br>                  Defendants. | Civil Action No. 11-cv-01905-RWS<br><br><u>CLASS ACTION</u> |

Putative class member Kenneth A. Leight ("Mr. Leight") respectfully submits this sur-reply to address new evidence and arguments raised for the first time in reply briefing submitted by Lori and JonCarlos Anderson (collectively, the "Andersons") (Dkt. No. 19).[1] The Andersons' newly submitted information confirms that they are "net gainers." Accordingly, the Andersons cannot serve as lead plaintiff candidates and must be disqualified. *See In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) (rejecting "net gainers" despite asserting class period losses).

## I. PROCEDURAL HISTORY

On December 19, 2011, Mr. Leight, the Andersons, and Choo Teck Kwang filed motions under the Private Securities Litigation Reform Act of 1995 ("PSLRA") seeking appointment as lead plaintiff in the above-captioned actions.[2] On December 27, 2011, the Andersons filed an opposition brief claiming the largest financial interest in the above-captioned actions and also that the Andersons are otherwise adequate and typical. *See* Dkt. No. 15. The Andersons' opposition did not make any arguments against Mr. Leight nor did it suggest that the Andersons' certifications previously filed with the Court (Dkt. No. 14-1) were incorrect or incomplete. *See* Dkt. No. 15. On December 29, 2011, Mr. Leight filed a timely opposition questioning the veracity of the Andersons' trading and noting that, assuming the transactions provided by the Andersons as of that date are accepted as true, the Andersons are, *inter alia*, "net gainers." *See* Dkt. No. 16. Mr. Leight noted that the Andersons, as "net gainers," are subject to unique defenses and therefore must be disqualified as lead plaintiff candidates. *See id.* Mr. Leight filed a reply in further support of his motion on January

---

[1] Unless otherwise noted, all emphases are added and all internal citations are omitted. References to "Andersons Reply" are to Dkt. No. 19.

[2] Choo Teck Kwang has not filed any opposition or reply memoranda and thus appears to have abandoned his motion.

6, 2012.  *See* Dkt. No. 17.  On January 9, 2012, the Andersons filed a reply with two new declarations, a new revised calculation of losses and two new "amended" certifications (dated January 8, 2011 [sic] for Ms. Anderson and January 8, 2012 for Mr. Anderson).  *See* Andersons' Reply at 2.  The Andersons Reply admits that the Andersons' opening brief overstated their initially claimed losses by 22.4% or approximately $457,000.  *See id.*  The Andersons' Reply also acknowledges that the Andersons' original PSLRA certifications were not accurate and were only discovered to be inaccurate after conducting a post-motion audit triggered by Mr. Leight raising "challenges to the calculations of the Andersons' losses."  *Id.* at 1.  According to the Andersons' Reply, their post-motion audit "identified some transactions not previously included on the Anderson Family's originally submitted loss chart or PSLRA certifications . . . and some transactions for Mr. Anderson where the original data used by his counsel provided transaction dates that have since been determined to be 'settlement dates' rather than 'trade dates,' thereby eliminating some of those transactions from the claimed losses suffered by the Anderson Family resulting from the alleged misconduct in this case. . . ."  *See id.* at 2.

In addition to clarifying the Andersons' actual Class Period trades, the new certifications submitted with the Andersons' Reply included a number of previously undisclosed option trades that actually ***increases the Andersons' "net gain" to $3.4 million***.

## II.    ARGUMENT

### THE ANDERSONS' NEW DATA CONFIRMS THEY ARE "NET GAINERS"

The Andersons' newly submitted data confirms that the Andersons are "net gainers" during the Class Period.  As illustrated in the chart below, during the Class Period Ms. Anderson expended approximately $11.7 million purchasing stock issued by K-V Pharmaceutical Company ("K-V") and buying options contracts relating K-V stock.  Over this same period, Ms. Anderson's new certification asserts that she received approximately $14.4 million in proceeds from selling K-V

2

shares and options contracts. Overall, Ms. Anderson's trades resulted in a ***net gain of $2.6 million*** during the Class Period. Likewise, Mr. Anderson's new certification states that he expended approximately $628,000 purchasing K-V shares but received $1.4 million in proceeds resulting in a ***net gain of $818,455*** during the Class Period. Collectively, based on the new figures provided to the Court, the Andersons realized a ***net gain of more than $3.4 million*** from their Class Period transactions in K-V stock:

|  | **Ms. Anderson** | **Mr. Anderson** | **Anderson Family** |
|---|---|---|---|
| CLASS PERIOD EXPENDITURES (STOCK) | ($11,642,171) | ($628,604) | ($12,270,775) |
| CLASS PERIOD EXPENDITURES (OPTIONS) | ($123,235) | - | ($123,235) |
| CLASS PERIOD PROCEEDS (STOCK) | $13,562,826 | $1,447,059 | $15,009,885 |
| CLASS PERIOD PROCEEDS (OPTIONS) | $824,565 | - | $824,565 |
| NET CLASS PERIOD FUNDS GAINED | **$2,621,985** | **$818,455** | **$3,440,440** |

The Andersons do not dispute their status as "net gainers." Rather, they conflate the analysis for assessing ***losses*** (which is done by matching shares) with the ***net gainer*** analysis and then disparage Mr. Leight's characterization of the Andersons as "net gainers" as a product of "simplistic" and "unilluminating" calculations. *See* Andersons' Reply at 3.[3]

As explained in Mr. Leight's Opposition (Dkt. No. 16), the financial interest analysis (which is the totality of the Andersons' focus) is only one-half of the required analysis under the PSLRA. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). A movant asserting the largest financial interest must also make a showing of typicality and adequacy. *See id.* Asserting the largest financial

---

[3] The calculation used by Mr. Leight to conclude that the Andersons are "net gainers" (total monies received from sales less total funds expended on purchases) is appropriate. *See In re Goodyear Tire & Rubber Co. Sec. Litig.*, Case No. 03-cv-2166-JRA, 2004 U.S. Dist. LEXIS 27043, at *19-20 (N.D. Ohio May 12, 2004) ("net expenditures, or total monies received from sales ($12,910,959.72) of Goodyear stock less total funds expended on purchases ($5,299,423.81), verifies that the Institutional Funds received a total of $7,611,535.91 in net proceeds as a result of their high-volume Goodyear stock sales during the Class Period. The Institutional Funds may have benefitted from the alleged fraud in view of the fact that they earned millions of dollars on net sales of Goodyear stock during the Class Period. ***Accordingly, the Institutional Funds cannot establish the largest financial interest in the relief sought by the class***").

3

interest without also meeting the adequacy and typicality requirement under Rule 23 does not trigger the PSLRA's presumption of adequacy.

The "net gainer" analysis has nothing to do with a movants' asserted losses. Rather, the "net gainer" analysis assesses whether a movants' trading subjects it to unique defenses undermining the "net gainer's" ability to claim damages. *See In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001) (rejecting a net gainer asserting an overall loss of $2.4 million); *see also Cardinal Health*, 226 F.R.D. at 308; *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173-74 (W.D.N.Y. 2007) ("If nothing else, [movant's] status as a net gainer may 'subject [it] to unique defenses that render such plaintiff **incapable of adequately representing the class**.'").

Moreover, the calculation of the "net gains" (as properly calculated by Mr. Leight) takes the difference between class period proceeds and expenditures. *See Perlmutter v. Intuitive Surgical, Inc.*, Case No. 10-cv-3451-LHK, 2011 U.S. Dist. LEXIS 16813, at *27 (N.D. Cal. Feb. 15, 2011) ("The purpose of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud"). The Andersons should be aware of the appropriate formula for calculating "net gains" given that *Intuitive Surgical* is cited in their papers. *See* Andersons' Reply at 4 n.4. Thus, characterizing Mr. Leight's analysis as "simplistic" and "unilluminating" is disingenuous at best. Because "net gainers" potentially profited from the defendants' fraud, courts summarily reject "net gainers" (like the Andersons) as lead plaintiff candidates – **despite the "net gainers" asserting a loss**. *See Comdisco*, 150 F. Supp. 2d at 945-46; *Cardinal Health*, 226 F.R.D. at 308; *Bausch & Lomb*, 244 F.R.D. at 174.[4]

---

[4] Indeed, the Andersons do not attempt to distinguish *Comdisco*, *Cardinal Health*, *Bausch & Lomb*, or the other cases cited by Mr. Leight rejecting "net gainers" as lead plaintiff candidates. *See*, *e.g.*, *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 600 (N.D. Ill. 2009) (questions surrounding the net gainer's ability to prove damages are "likely to consume a significant portion of the litigant's time and energy and . . . there is a danger that preoccupation with defenses unique to the representative[] will cause absent class members to suffer.").

The analysis in *Prefontaine v. Research in Motion Ltd.*, No. 11-cv-04068-RJS, 2012 U.S. Dist. LEXIS 4238 (S.D.N.Y. Jan. 5, 2012) ("*RIMM*") does not mandate a different result.[5] In *RIMM*, movants challenging the appointment of the plaintiff claiming the largest loss in that action (Mr. Shemian) simply argued that Mr. Shemian was atypical because he may have profited from options trading. *See id.* at *8 ("The RIM Investor Group argues that Shemian cannot 'adequately' represent the plaintiff class because he profited from options transactions that took place during the Class Period"). The competing movants did not argue that Mr. Shemian was a "net gainer" who received more proceeds than he expended during the class period. *See id.* Simply profiting from options trades does not convert one into a "net gainer." There is no analysis within *RIMM* addressing whether Mr. Shemian's class period ***total profits*** exceeded his ***total expenditures***. Since *RIMM* does not address the "net gainer" issue, it is wholly distinguishable from the matter before the Court.

## III.   CONCLUSION

For the foregoing reasons, Mr. Leight respectfully requests that the Court grant his motion in all respects and deny all other motions seeking appointment of lead plaintiff.

Dated:  January 19, 2012                                          Respectfully submitted,


                                                                           */s/Don R. Lolli*

**DYSART TAYLOR COTTER
McMONIGLE & MONTEMORE, P.C.**
Don R. Lolli    MOBar#56263MO
dlolli@dysarttaylor.com
4420 Madison Avenue
Kansas City, MO 64111
Telephone: (816) 931-2700
Facsimile: (816) 931-7377

---

[5]   *RIMM* was provided to the Court as Exhibit C to the Piven Decl. filed in Support of the Andersons' Reply.

5

*Proposed Liaison Counsel*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Sean M. Handler
shandler@ktmc.com
Naumon A. Amjed
namjed@ktmc.com
Ryan T. Degnan
rdegnan@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Kenneth A. Leight and Proposed Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 19, 2012.

                                           */s/ Don R. Lolli*