UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN RE K-V PHARMACEUTICAL ) No. 11CV01816 AGF
COMPANY SECURITIES LITIGATION )

## MEMORANDUM AND ORDER

This matter is before the Court on motions filed by two separate Plaintiffs on December 19, 2011, seeking appointment as Lead Plaintiff in this consolidated securities fraud putative class action. (Doc. Nos. 9, 12) An evidentiary hearing was held on the motions on April 11, 2012.

## Background

Defendant K-V Pharmaceuticals, Inc. ("K-V") is a pharmaceutical company that develops, manufactures, acquires, and markets prescription pharmaceutical products. (Compl. ¶ 2, Doc. No. 1) The complaints allege that on February 4, 2011, K-V received Food and Drug Administration ("FDA") approval for the exclusive right to market a maternity injection drug named Makena, used to avoid preterm birth. (Compl. ¶¶ 4, 7) Upon FDA approval, K-V priced Makena at approximately $1500 per injection, which was substantially higher than its price in the past. (Compl. ¶ 7)

The Plaintiffs allege a "Class Period," for purposes of the present litigation, that begins on February 14, 2011, when K-V held a conference call with investors claiming that a program called Makena Care Connection would expand access of Makena to

pregnant women who otherwise would have been unable to obtain the drug from compounding pharmacies. (Compl. ¶¶ 8, 26) According to Plaintiffs, the financial assistance offered by the Makena Care Program was insufficient to ensure access to all eligible patients due to its high price. (Compl. ¶ 8) On March 17, 2011, two United States Senators expressed concern about the potentially anti-competitive effects of K-V's exclusive rights and the dramatic increase in cost, resulting in diminished access to health care for women and increased preterm births. (Compl. ¶¶ 8, 32, 33) As a result of a press release by these Senators, along with an attached letter to the FTC, the price of K-V's A series stock dropped from $9.64 to $8.50 in a single trading session. (Compl. ¶¶ 9, 34) The decrease in the K-V stock price was a result of some of the artificial inflation caused by K-V's initial statements regarding Makena. (Compl. ¶¶ 9, 34)

On March 30, 2011, the FDA issued a press release stating that it did not intend to take enforcement actions against pharmacies for distributing the generic form of Makena. (Compl. ¶¶ 11, 37) After the FDA press release, the price of K-V's A series stock dropped from $7.11 to $5.65 in a single trading session, with more than 25 million shares changing hands that day. (Compl. ¶¶ 12, 38) On April 1, 2011, K-V announced it was reducing the list price of Makena by nearly 55 percent. (Compl. ¶¶ 13, 39)

The final day of the proposed Class Period is April 4, 2011, when media reports of physician hostility toward K-V's Makena resulted in an additional 9.5 percent stock price drop. (Compl. ¶¶ 14, 40) This constitutes the end of the Class Period, as K-V stopped presenting encouraging information about Makena and its viability to investors.

On October 19, 2011, Plaintiff Frank Julianello filed a putative class action against K-V under the Private Securities Litigation Reform Act ("PSLRA"). Two additional putative class actions were also filed against K-V, and on March 8, 2012, this Court consolidated the three actions. (Order of Consolidation, Doc. No. 33) Plaintiffs allege fraud in violation of the Securities and Exchange Act of 1934 and seek class certification, as well as damages, interest, and reasonable costs and attorneys' fees.

## Proposed Lead Plaintiffs' Arguments

On December 19, 2011, Plaintiff Kenneth A. Leight and Plaintiffs Lori and JonCarlos Anderson ("Anderson Family") filed separate motions for appointment as lead plaintiff and approval of selected lead and liaison counsel.[1]  Both proposed lead plaintiffs contend that they have suffered the greatest loss in connection with purchases of K-V stock during the Class Period and best satisfy the "typical" and "adequate" requirements of Rule 23(a) of the Federal Rules of Civil Procedure. (Doc. Nos. 10, 13)

Plaintiff Kenneth A. Leight argues that he is the "most adequate" candidate for lead plaintiff based on his affidavit that he suffered a loss of $100,881 in connection with his purchases of K-V securities during the Class Period. (Mem. in Support of Leight's Mot. for Appointment of Lead Counsel 1, Doc. No. 10) Leight further contends that he is "typical" and "adequate" pursuant to Rule 23. (*Id.* at 2) Leight asserts that he is

---

[1] Plaintiff Choo Teck Kwang also filed a motion to appoint lead counsel, but this Court granted his motion to withdraw the motion on March 27, 2012. (Docket Text Order, Doc. No. 47)

"typical" because he (1) purchased K-V securities during the Class Period; (2) at market prices which allegedly were artificially inflated; and (3) suffered damages as a result. (*Id.* at 7-8) Likewise, Leight asserts that he is the most "adequate" lead plaintiff because his interests are aligned with other class members who suffered loss, and no evidence of antagonism exists between himself and other class members. (*Id.* at 8)

The Anderson Family, on the other hand, purports to have sustained losses of $1,580,999.11.[2] The Anderson Family further contends that it is "typical" because its claims are "identical, non-competing, and non-conflicting with the claims of the other Class members" based upon stock purchases and sustained losses during the Class Period. (Mem. in Support of Anderson Family's Mot. to Appoint Lead Pl. 9-10, Doc. No. 13) Further, the Anderson Family argues that it will adequately represent the Class because its interests are aligned with the Class based on identical claims, and no antagonism exists between the Anderson Family and the other proposed Class members. (*Id.* at 10)

In opposition to the Anderson Family's motion, Leight acknowledges that his losses are less than the Anderson Family's, but he argues that he remains the strongest potential lead plaintiff because the Anderson Family "suffer[s] from several defects that raise doubts about their adequacy and typicality." (Leight's Mem. in Opp'n 1, Doc. No.

---

[2] Initially, the Anderson Family claimed a loss of $2,038,17.33. However, following assertions by Leight that the figure was inaccurate, the Anderson Family employed an independent accounting firm to calculate the Anderson Family's losses using more complete information. (Reply Mem. in Support of Anderson Family's Mot. to Appoint Lead Pl. 1-2, Doc. No. 19)

16) Specifically, Leight argues that the Anderson Family is a "net gainer" because it "profited by at least $3.3 million by selling artificially inflated shares during the Class Period." (*Id.* at 2) In addition, Leight asserts that the Anderson Family purchased over 722,000 shares after the partially corrective information entered the market, subjecting it to unique defenses that may undermine its ability to rely on the fraud on the market doctrine. (*Id.* at 2) Leight contends that he suffers from none of the aforementioned infirmities in that he purchased 12,000 shares of K-V series A stock before any partial disclosures and held the shares through the end of the Class Period, sustaining losses of over $100,000. (*Id.* at 3)

In response, the Anderson Family argues that Leight uses "simplistic, but unilluminating math" which lumps together Class Period purchases and sales and uses the difference of those totals, without taking into account the cost basis in the shares and without excluding irrelevant "in-and-out transactions" prior to disclosure. (Reply Mem. in Support of Anderson Family's Mot. to Appoint Lead Counsel 3, Doc. No. 19) The Anderson Family contends that using proper calculations, it has sustained far greater losses than Leight. (*Id.* at 6) Further, the Anderson Family claims that Leight has failed to rebut the Anderson Family's presumptive lead plaintiff status because he has not proven that it is inadequate or subject to unique defenses. (*Id.* at 8-13) In his sur-reply, Leight contends that his math is correct and argues that the Anderson Family is incapable of representing the class because it "potentially profited from the defendant's fraud," rendering it a "net gainer." (Sur-Reply of Kenneth Leight 4, Doc. No. 25)

## Legal Standards

The PSLRA sets forth the procedure for selecting a lead plaintiff to oversee securities class actions. 15 U.S.C. § 78u-4(a)(3). Pertinent to the present motions, the PSLRA provides:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
>
> > **(aa)** has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> >
> > **(bb)** in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > **(cc)** otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

Fed. R. Civ. P. 23(a) states in pertinent part:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> . . .
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

In considering whether a claim is typical, courts look to "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

(quoting *Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  Adequacy requires courts to ask whether the interests of the class representative and counsel conflict with other class members and whether the class representative and counsel will "prosecute the action vigorously on behalf of the class[.]"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

A member of the purported plaintiff class may rebut this presumption by presenting proof that the presumptively most adequate plaintiff "**(aa)** will not fairly and adequately protect the interests of the class; or **(bb)** is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb); *Prefontaine v. Research in Motion Ltd.*, No. 11 Civ. 4068(RJS), 2012 WL 104770, at *3 (S.D.N.Y. Jan. 5, 2012).

## Discussion

### A.  Plaintiffs' Financial Interest

In assessing losses under the PSLRA, "[t]here is no prescribed method for determining which movant has the largest 'financial interest.'"  *Schueneman v. Arena Pharms., Inc.,* No. 10cv1959 BTM(BLM), 2011 WL 3475380, at *3 (S.D. Cal. Aug. 8, 2011).  The Anderson Family advocates the method set forth in *Dura Pharm., Inc. v. Broudo*, which does not consider losses resulting from stock trades that occurred prior to any disclosure of fraud.  544 U.S. 336, 342-43 (2005).  The *Dura* court held that a plaintiff cannot prevail by only establishing that the price on the date of purchase was

inflated due to fraudulent conduct because "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." *Id.* at 342. Courts following *Dura* look only at those recoverable losses caused by the alleged fraud-on-the-market when determining lead plaintiff in a securities class action because the alleged misconduct could not cause losses suffered prior to that misconduct being revealed to the public. *See Schueneman,* 2011 WL 3475380, at *3 ("for purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV01825 (NNG)(RER), 2007 WL 680779, at *4 (E.D.N.Y. March 2, 2007) ("any losses that [plaintiff] may have incurred before [the] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation.").

"[T]he method used and factors considered in determining each movant's financial interest remain fully within the discretion of the Court." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 406-07 (S.D.N.Y. 2004). After reviewing the motions, memoranda in support and opposition, and the oral arguments during the hearing, the undersigned finds the *Dura* analysis in calculating financial interest to be persuasive. In support of its position, the Anderson Family has submitted a detailed accounting of its losses by an independent certified public accountant using the *Dura* analysis and the LIFO (last in, first out) formula, which is

most accepted by courts.[3] (Decl. of Steven G. Albert, CPA Ex. 1, Doc. No. 20 Ex. A) Using this standard, the Anderson Family contends that from the time that the alleged fraud was disclosed until the end of the Class Period, it suffered losses of $1,580,999.11.

In Leight's written responses and oral argument, he does not contest that the Anderson's have facially incurred the largest losses. (*See, e.g.,* Leight's Mem. in Opp. 1, Doc. No. 16) Thus, the Court finds that the Anderson Family "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

## B. Rule 23(a) Requirements

Although Leight concedes that the Anderson Family has the largest financial interest in the relief sought, he argues that the Anderson Family fails to otherwise satisfy the Rule 23 requirements of typicality and adequacy. As previously stated, the Anderson Family, asserts that it is "typical" based on its identical and non-conflicting claims with the proposed Class members' claims and "adequate" because its interests are aligned with the Class, with no antagonism between the Anderson Family and the proposed Class members. Only a preliminary showing that plaintiff is adequate and typical is required under Rule 23. *Reese v. Bahash*, 248 F.R.D. 58, 62 (D.D.C. 2008) (citations omitted). The Court finds that the Anderson Family has made such preliminary showing, rendering

---

[3] "Courts that prefer LIFO over FIFO claim that '[t]he main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price.'" *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *10 (N.D. Cal. Feb. 15, 2011) (quoting *In re eSpeed, Inc. Sec. Litig.,* 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (footnote omitted)).

it the presumptive lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As such, Leight must rebut this presumption with proof that the Anderson Family is not typical and adequate.

Leight contends the Anderson Family's net gains from their Class Period transactions calls into question its adequacy and typicality under Fed. R. Civ. P. 23(a). Leight proposes that this Court subtract the amount expended on K-V stock during the Class Period from the proceeds the Anderson Family received in sales during this period. (Leight's Mem. in Opp. 5-6, Doc. No. 16) In assessing the losses under this model, Leight includes all gains and losses during the Class Period, even those before K-V's partial disclosure on March 17, 2011. (*Id.* at 5) According to Leight, the resulting amount shows net gains of approximately $3.3 million. (*Id.* at 6) Leight argues that these net gains raise questions of the Anderson Family's ability to prove damages and are "likely to consume a significant portion of the litigant's time and energy" such that preoccupation with the unique defense would cause absent class members to suffer. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.,* 256 F.R.D. 586, 600 (N.D. Ill. 2009) (citation and internal quotations omitted).

The Anderson Family, on the other hand, asserts that Leight's calculations are wrong in light of *Dura*. The Anderson Family correctly notes that this calculation fails to properly match purchases and sales, which is necessary to determine whether a gain or loss was associated with the fraud-related disclosure. The Court finds this argument persuasive. According to the LIFO loss chart submitted by the Anderson Family, the independent accountant "matched shares purchased in the Class Period until every single

share purchased in the Class Period was matched with a sale." (Decl. of Steven G. Albert, CPA ¶ 8, Doc. No. 20, Ex. A)  The result of this in-depth analysis is a total loss of approximately $1,580,000 and not a windfall for the Anderson Family as Leight argues.[4]  Thus, Leight fails to demonstrate that the Anderson Family meets the criteria of a "net gainer."  With nothing more than conclusory statements that the Anderson Family actually profited during the Class Period, the undersigned finds that the Anderson Family is not subject to unique defenses that would conflict with the other members of the Class. *See Prefontaine v. Research in Motion Ltd.,* No. 11 Civ. 4069 (RJS), 2012 WL 104770, at *2 (S.D.N.Y. Jan. 5, 2012) (refusing to recognize a conflict of interest based on conclusory statements that proposed lead plaintiff profited on put options during the Class Period and could not adequately represent the class).

The Court is also unpersuaded by Leight's argument that the Anderson Family's trading activity after the partial first disclosure renders it incapable of adequately representing the class.  Leight contends that the Anderson Family's purchase of over 722,000 shares of K-V stock after March 17, 2011 subjects it to the argument that the defendants' misstatements played no role in its decisions to purchase K-V securities, thus invalidating its fraud-on-the-market claim.  *See Faris v. Longtop Fin. Techs. Ltd.,* No. 11

---

[4] The Court finds the *Perlmutter* case unpersuasive.  The court applied the net gainer analysis in assessing a proposed lead plaintiff's losses, using calculations not accepted by this Court.  *Perlmutter v. Intuitive Surg., Inc.,* No. 10-CV-03451-LHK, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011).  The court did not assess the net gainer argument in terms of meeting the Rule 23 standards, as Leight argues here.

Civ. 3658 SAS, 2011 WL 4444176, at *7 (S.D.N.Y. Oct. 4, 2011) (finding post-disclosure purchases suggested that the proposed lead plaintiffs invested in securities despite notice of the defendants' misstatements and omissions, undermining the ability to assert the fraud-on-the-market presumption of reliance).

Courts have consistently rejected the argument that post-disclosure purchases preclude a proposed class representative from meeting Rule 23(a) requirements in a fraud-on-the-market suit. *See, eg., Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 138 (5th Cir. 2005) ("Reliance on the integrity of the market prior to disclosure of alleged fraud (i.e. during the class period) is unlikely to be defeated by post-disclosure reliance on the integrity of the market."); *In re Pfizer Inc. Sec. Litig.*, ___ F.R.D. ___, 2012 WL 1059671, at *7 (S.D.N.Y. March 29, 2012) (rejecting defendants' argument that post-disclosure purchases rendered the putative class representative atypical); *In re Connetics Corp. Sec. Litig.,* 257 F.R.D. 572, 577 (N.D. Cal. 2009) ("the weight of authority appears to favor the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement."). "Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action." *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988).

Thus, the Anderson Family is entitled to a presumption that they relied on misleading statements in making securities trading decisions. The Court rejects Leight's conclusory statements that the Anderson Family's increase in purchases after partial

disclosure renders them unable to rely on the fraud-on-the-market doctrine. *See Schueneman v. Arena Pharms., Inc.,* No. 10cv1959 BTM(BLM), 2011 WL 3475380, at *7 (S.D. Cal. Aug. 8, 2011) ("Absent evidence that [the proposed lead plaintiff] did not rely on the market price of the shares . . . the Court will not make such a presumption based on the level of his trading activity.").

The Court therefore finds that Leight has failed to meet his burden of proving that the Anderson Family is not the presumptively most adequate or typical plaintiff under Fed. R. Civ. P. 23(a). To the contrary, the Anderson Family's injuries reflect those of the other class members arising from the same course of conduct. Further, given the substantial losses realized by the Anderson Family, it has considerable motivation to achieve the best outcome for the class. As such, the Court finds that the Anderson Family will vigorously pursue all claims on behalf of the class, rendering it adequate for purposes of lead plaintiff.

However, Leight has also raised an argument that JonCarlos Anderson is inadequate to represent the class based on his young age and questionable trading history. During the hearing, the Anderson Family's attorney represented to the Court that Ms. Anderson's losses are sufficient to render her the presumptive lead plaintiff. In fact, the $1,580,999.11 loss figure does not account for JonCarlos' losses. (Decl. of Steven G. Albert, CPA Ex. 1, Doc. No. 20 Ex. A) The Court does not find that JonCarlos could not adequately represent the Class, but rather that he traded under the direction and control of Ms. Anderson. Therefore, she is best suited to represent the Class in this action.

Accordingly, the Court finds that Lori Anderson meets the requirements of the PSLRA and the Court shall appoint Lori Anderson, and not the Anderson Family.

**C.  Lead Counsel**

The parties do not contest the credentials or qualifications of either proposed lead counsel to represent the Class.  Therefore, the undersigned finds, consistent with the lead plaintiff analysis, Brower Piven will be appointed lead counsel, and Holland, Groves, Schneller & Stolze, LLC, shall be appointed as liaison counsel for the proposed Class in this matter.

Accordingly,

**IT IS HEREBY ORDERED** that Kenneth A. Leight's motion to be appointed Lead Plaintiff is **DENIED**.  (Doc. No. 9.)

**IT IS FURTHER ORDERED** that Anderson Family's Motion to be appointed Lead Plaintiff, and approval of his selection of Lead Counsel is **GRANTED**.  (Doc. No. 12.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of May, 2012.